IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>  v.<br><br>**JOSE SILVA-RENTAS,**<br>  Defendant. | Criminal No. 14-cr-754-2 (MAJ/BJM) |

### REPORT AND RECOMMENDATION

On March 31, 2017, Defendant Jose Silva-Rentas ("Silva-Rentas") pleaded guilty to one count of conspiracy to import five kilograms or more of cocaine in violation of 21 U.S.C. § 963 and 21 U.S.C. § 952(a); one count of conspiracy to knowingly and unlawfully possess firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 924(o); and one count of conspiracy to knowingly conduct financial transactions involving the proceeds of unlawful sales of controlled substances in violation of 18 U.S.C. § 1956 and 18 U.S.C. § 1957. Docket ("Dkt.") 1453.

This court sentenced him to 215 months and 24 days' imprisonment for his offenses. Dkt. 1640. His release date is currently scheduled for August 4, 2029. Dkt. 2808-1 at 1. Before the court is his motion for compassionate release. Dkt. 2775. The government has opposed. Dkt. 2808. This matter was referred to me for a report and recommendation. Dkt. 2776. For the following reasons, the court should **DENY** Silva-Rentas's motion for compassionate release.

### BACKGROUND

Silva-Rentas is a 47-year-old male born on July 19, 1976. Dkt. 2808-1 at 1. At age 21, he was convicted of two charges at the state level for conspiracy and possession of controlled substances, for which he was sentenced to a total of seven years in prison. Dkt. 1561 at 18 ¶ 90. He has no other known criminal history, juvenile or otherwise. *Id*. at ¶ 89.

In the present case, Silva-Rentas was sentenced to 215 months and 24 days for three offenses – conspiracy to import controlled substances, conspiracy to possess a firearm in furtherance of a drug trafficking crime, and money laundering. Dkt. 1640. He served as a leader in a drug trafficking conspiracy, coordinating the importation of multi-kilogram quantities of narcotics. He provided firearms to other members of the conspiracy to protect the drug distribution business. Dkt. 1561 at 9. He also laundered money earned from drug trafficking by funding the construction of urbanizations, a housing complex, and a regional campus for a university, as well as purchasing vehicles, vessels, and making structured cash deposits at a financial institution. *Id*. at 16. He is currently incarcerated at Federal Correctional Institution Fort Dix, New Jersey ("Fort Dix"). Dkt. 2775-1 at 3. He is being held in a low-security portion of the facility. *Id*.

Silva-Rentas claims eligibility for compassionate release due to his medical conditions and the length of his sentence. He suffers from high blood pressure (hypertension) and high cholesterol, Dkt. 2808-4 at 1, and he claims that these conditions are being inadequately monitored and treated at Fort Dix. Dkt. 2775 at 2. Medical records indicate that he was recently examined by a doctor and is receiving medication for both of his conditions, Dkt. 2808-1 at 7, and is being given advice with respect to diet and exercise. *Id*. at 2, 4. Given his offense level (42) and criminal history category (II), his guideline sentencing range was 360 months to life. *See* Dkt. 1646.

## STANDARD OF REVIEW

A court may grant "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A). That statute provides, in relevant part, that:

> the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that

> does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)    extraordinary and compelling reasons warrant such a reduction
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release). Under this statute, a district court may properly consider a motion for compassionate release under three circumstances: (1) the motion is filed by the Director of the Bureau of Prisons ("BOP"); (2) the motion is filed by defendant after he exhausts all his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) the motion is filed by defendant 30 days after defendant requested the BOP to petition for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A).

Once a motion for compassionate release is properly before the court, the court must then determine if the defendant is eligible for release. The statutory language quoted above requires that the defendant show that "extraordinary and compelling reasons warrant" a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's applicable policy statements. *Id*. Additionally, a defendant's dangerousness is a paramount concern as a court weighs the decision to grant a defendant early release. *United States v. Gil*, 484 F.Supp.3d 19, 22 (D.N.H. 2020); *see also United States v. Bradshaw*, No. 1:15-CR-422, 209 U.S. Dist. LEXIS 225627, 2019 WL 7605447, at *7 (M.D.N.C. Sept. 12, 2019) (explaining the overlap between the dangerousness requirement in the compassionate release policy statement and the § 3553(a) requirement that courts consider the need to protect the public).

The Section 3553(a) factors a court must consider at sentencing include the nature and circumstances of the defendant's offense and the defendant's personal history and characteristics. 18 U.S.C. § 3553(a)(1). Section 3553(a) requires the court to ensure that the sentence imposed reflects the seriousness of the offense committed, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public from further crimes of the defendant, and provides the defendant with needed training, medical care, and other treatment in the most effective way. 18 U.S.C. § 3553(a)(2). Section 3553(a) further requires the court to consider the kinds of sentences available, the sentencing guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(3)-(7).

In short, a court may reduce a term of imprisonment under the compassionate release provision if it finds: (1) that extraordinary and compelling reasons warrant the reduction; (2) that the defendant will not be a danger to the safety of any other person or the community; and (3) that the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *see also United States v. Sapp*, No. 14-CR-20520, 2020 U.S. Dist. LEXIS 16491, 2020 WL 515935, at *2-5 (E.D. Mich. Jan. 31, 2020); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187-88 (D.N.M. 2019). The defendant has the burden of showing that he or she is entitled to a sentence reduction. *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020). The court has "broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020) (internal quotation marks omitted).

## DISCUSSION

This court has jurisdiction under 18 U.S.C. § 3582(c)(1)(A). For the reasons stated below, Silva-Rentas's motion for compassionate release should be denied. I will discuss both whether Silva-Rentas has adequately exhausted his administrative remedies as well as the merits of his eligibility for compassionate release.

### A.     Exhaustion of Administrative Remedies

As a threshold matter, the United States claims that Silva-Rentas has not adequately exhausted his administrative remedies before submitting his motion for compassionate release. As stated above, a court can consider a motion for compassionate release only if (1) the motion is filed by the Director of the BOP; (2) the motion is filed by the defendant after he exhausts his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) the motion is filed by the defendant 30 days after the defendant requested BOP to petition for compassionate release on his behalf.

Courts are split on the effect that a BOP reply within 30 days of a defendant's request has on a defendant's obligation to exhaust administrative remedies. While the First Circuit has yet to rule specifically on this question, several opinions in this district take the position that any response within the 30-day window forces the defendant to proceed through the Administrative Remedy Program, 28 C.F.R. 542, subpart B, to exhaust administrative remedies. *See United States v. Nieves*, 615 F. Supp. 3d 73, 76 (D.P.R. 2022) ("This Court holds that defendants cannot rely on the thirty (30)-day provision if the warden of their facility responded to their request within thirty (30) days of receipt. In such cases, defendants must exhaust administrative remedies before a federal court may properly consider their motion for compassionate release"); *United States v. Cruz*, No. 01-717, 2022 U.S. Dist. LEXIS 155024, 2022 WL 3699620 at *6-7 (D.P.R. Aug. 26,

2022) ("The purpose of including a thirty-day lapse without warden response as an alternative to administrative exhaustion is, to ensure that the Warden acts timely") (internal quotations omitted). Other district courts within this circuit, as well as other circuit courts, take the position that a defendant can file a motion in district court for compassionate release 30 days after requesting the same from BOP, regardless of if, when or how BOP responds to the request. *See, e.g., United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021) ("[A] prisoner may wait 30 days after filing his request and – whether the BOP has ruled on the request or not – he is free to file a motion in the district court"); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020); *United States v. Guzman Soto*, 613 F. Supp. 3d 538, 542-43 (D. Mass. 2020).[1] Regardless, exhaustion of administrative remedies is not a jurisdictional rule, but merely a mandatory claim processing rule. *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022). As a result, the government can waive this requirement "either expressly or by failing to raise it as a defense." *United States v. Pabon-Mandrell*, No. 07-121, 2023 U.S. Dist. LEXIS 229346, 2023 WL 8866598 at *12 (D.P.R. Dec. 22, 2023).

Silva-Rentas's original request was submitted to Warden Thompson at Fort Dix on February 16, 2024. *See* Dkt. 2775-1, Dkt. 2808-5 at 1. He received a response from the RIS coordinator for the facility within the 30-day window. Dkt. 2808-5 at 2. In their response, the RIS coordinator did not provide a full denial on the merits, but rather attempted to clarify the categories of reasons that BOP considers "extraordinary and compelling." The RIS coordinator instructed Silva-Rentas to resubmit his request in a manner that refers to "the one specific category" that his request falls under. *Id*. There is no evidence that Silva-Rentas ever resubmitted his request. Instead,

---

[1] In *United States v. Rivera-Rodriguez*, 75 F.4th 1 (1st Cir. 2023), the First Circuit implied a similar understanding of the statute. *See id*. at fn. 23 ("Under the amended statute, individuals may file their own motions with the district court if they have asked the BOP and *either* waited 30 days *or* exhausted their administrative rights to appeal a BOP denial") (emphasis added).

he moved for compassionate release before this court after waiting over 30 days from his original request.

I am persuaded by the reasoning in *Garrett* and similar authorities and hold that a defendant is permitted to file for compassionate release 30 days after submitting their request to the warden, regardless of the response to the request. This interpretation is more consistent with the purpose of the First Step Act, which amended Section 3582(c)(1)(A) to add the 30-day filing option.[2] The First Step Act was intended to ameliorate lengthy delays faced by criminal defendants filing for compassionate release by providing a faster pathway to direct judicial review. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 399 (E.D. Pa. 2020) ("The First Step Act—and the critical 30-day lapse route it provided—directly responded to a compassionate-release system so plagued by delay that prisoners sometimes died while waiting for the BOP to make a decision"); *United States v. Russo*, No. 16-cr-441, 2020 U.S. Dist. LEXIS 59223, at *7 (S.D.N.Y. 2020) (noting "congressional intent for the defendant to have the right to meaningful and prompt *judicial* determination of whether he should be released") (emphasis in original). This purpose would be undercut if a defendant were forced to go through the entire appeal process before the BOP, and face a potential lengthy delay, simply because they received an initial timely response from their warden. *See United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *2 (D. Neb. May 26, 2020) ("It wouldn't make sense to conclude that a prisoner can go to court within 30 days if the delay is the warden's, but the prisoner is interminably stuck if the warden makes a timely decision but the BOP's Regional Director or General Counsel don't").

The most natural reading of the statutory text also supports this interpretation. Use of the words "or" and "whichever is earlier" suggest that the 30-day rule and full exhaustion of

---

[2] Pub. L. 115-391, 132 Stat. 5194 (2018).

administrative remedies serve as alternative pathways for filing a compassionate release motion. *See Guzman Soto*, 613 F. Supp.3d at 543 (requiring a defendant to exhaust all administrative remedies upon a timely response from the warden "ignores the plain language of the statute"); *United States v. Somerville*, 463 F. Supp. 3d 585, 591 (W.D. Pa. 2020) ("These are two, *alternative* ways that a prisoner can 'exhaust' his remedies with the BOP before seeking judicial relief, and he may seek relief after 'whichever is earlier'") (emphasis in original).[3] Simply put, "there are two options, and the statute doesn't say that the second option evaporates if the warden happens to deny the prisoner's request before 30 days is up." *Jenkins*, 2020 WL 2814437 at *2.

Since Silva-Rentas moved for compassionate release more than 30 days after his original request, his motion is properly before this court. I will therefore proceed to analyze the merits of his compassionate release claim.

    **B.**    **Defendant's Eligibility for Compassionate Release**

For reasons discussed below, Silva-Rentas fails to demonstrate his eligibility for compassionate release. A court may reduce a term of imprisonment under the compassionate release provision if: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. I shall address each of these requirements in turn.

---

[3] Even courts that find a defendant must exhaust all administrative remedies if BOP provides a timely reply acknowledge that the text more clearly indicates otherwise. *See, e.g.*, *United States v. Nance*, No. 7:92CR00135, 2020 U.S. Dist. LEXIS 4429, 2020 WL 114195 at *3-4 (W.D. Va. Jan. 10, 2020) (referring to the position that a defendant may file their claim after 30 days regardless of BOP response as the "literal reading" of the text).

### *i.* **Extraordinary and Compelling**

The first issue within this three-step analysis is whether "extraordinary and compelling reasons" warrant a reduction to Silva-Rentas's term of imprisonment. He fails to make this showing.

U.S.S.G § 1B1.13(b) describes the criteria for identifying whether "extraordinary and compelling" reasons exist. Relevant to this case are § 1B1.13(b)(1), outlining when a defendant's medical circumstances create an "extraordinary and compelling" reason warranting a reduction, and § 1B1.13(b)(6), outlining when an unusually long sentence creates an "extraordinary and compelling" reason warranting a reduction. The Sentencing Guidelines also contain a catchall indicating that any other circumstance of similar gravity to those outlined elsewhere in § 1B1.13(b), or a combination of such circumstances, may rise to the level of "extraordinary and compelling."

Silva-Rentas puts forward two arguments for why his circumstances are "extraordinary and compelling." First, he notes that he currently suffers from high blood pressure and high cholesterol and claims that these conditions are being inadequately monitored and treated.[4] Second, he claims that his sentence is "unusually long" and that he would receive a lower sentence for his offenses today. Dkt. 2775 at 2.

First, Silva-Rentas's medical conditions do not rise to the level of "extraordinary and compelling" circumstances warranting release. Courts generally view compassionate release due solely to a medical condition as "an extraordinary and rare event" granted only in cases of notable severity. *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Section 1B1.13(b)(1)(C) indicates that "suffering from a medical condition that requires long-term or

---

[4] Unlike some other recent claimants, Silva-Rentas does not claim that his medical conditions make him more susceptible to severe illness or death from COVID-19.

specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" may count as "extraordinary and compelling." But the record shows that Silva-Rentas saw a doctor for a consultation as recently as May 22, 2024 and is receiving medication to address his conditions. Dkt. 2808-4. The consulting physician noted that "[t]he plan of care is being discussed with patient, and he verbalizes understanding of it." *Id*. at 2. Also, Silva-Rentas has not demonstrated that his conditions require long-term or specialized care, or that lack of such care would place him at a significant risk. In fact, the doctor's notes from his consultation identify him as Care Level 2, *id*., indicating a stable outpatient requiring routine clinician evaluations monthly to every 6 months. *See* Federal Bureau of Prisons, *Care Level Classification for Medical and Mental Health Conditions or Disabilities* (2019) (describing the Care Level system used by BOP physicians). All told, Silva-Rentas fails to show that his medical conditions rise to the level of "extraordinary and compelling."

Second, Silva-Rentas's argument that he received an "unusually long sentence" is also unavailing. The Sentencing Guidelines state that unusually long sentences may qualify as "extraordinary and compelling" circumstances, provided certain additional criteria are met:

> If a defendant received an (1) unusually long sentence and has (2) served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b).

Silva-Rentas has served less than 10 years of his sentence. Dkt. 2808-1 at 2. Further, he has not shown that his original sentence of just over 215 months is "unusually long" or that a change in the law would result in a substantially shorter sentence today. Given his offense level of 42 and criminal history category of II, Dkt. 1646 at 1, his sentencing guideline range is 360 months

to life – even the minimum of this range is substantially longer than the sentence he is serving. He cites no change in the law that would lead to a shorter sentence. Therefore, he fails to demonstrate that his sentence is "unusually long" and thus fails to show that extraordinary and compelling reasons justify reducing his sentence.

### ii. Danger to Community

The next factor for consideration is whether Silva-Rentas would pose a danger to the safety of any other person or to the community if released. For the reasons below, I conclude that his release would pose a danger.

There is no one test that courts rely upon when determining if a defendant poses a danger to the safety of the public at large; instead, courts look to various factors that suggest the defendant is more or less likely to reoffend. Factors that courts have considered when deciding if a defendant will pose a danger if they are released, among others, include the defendant's history of prior offenses, particularly if the prior offenses were violent or involved weapons; other evidence of violence; whether the defendant's prior offenses harmed the public in some other way; time the defendant has already served; any disciplinary issues with the defendant while in prison; whether the defendant has pursued educational opportunities while incarcerated; the security level of the defendant's place of incarceration; any health problems faced by the defendant that might curtail the defendant's behavior upon release; and release conditions.[5]

---

[5] *See, e.g.*, *United States v. Nuzzolilo*, 517 F. Supp. 3d 40, 44 (D. Mass. 2021) (denying the defendant's motion due to the defendant still having a "significant amount of time still to serve" on his sentence, his history of dealing drugs and returning to the drug trade after prior convictions, and his history of making threats of violence despite apparently never carrying them out); *United States v. Perkins*, 480 F. Supp. 3d 360, 367-69 (D.N.H. 2020) (finding the defendant unlikely to be a danger to anyone after considering his prior federal offenses; the defendant's history of cooperating with law enforcement; his good behavior in prison, including solely minor disciplinary infractions and participation in educational programs; and proposed release to home confinement under strict supervision); *United States v. Bradshaw*, No. 1:15-CR-422, 2019 U.S. Dist. LEXIS 225627, 2019 WL 7605447, at *7-8 (M.D.N.C. 2019) (reducing the defendant's sentence after finding that he led a law-abiding life until his mid-sixties, he had no history of violence, his health problems would significantly limit his activities, his brother and daughter had agreed to provide care for him upon release, and the three years he had already served would deter recidivism).

Several of the factors above tilt in Silva-Rentas's favor. While his offense included a firearms charge, little else in his record suggests that he was or is disposed to violence. He completed a notable number of educational programs while incarcerated, two of which were drug educational courses addressing his previous issues with substance abuse. *See* Dkt. 2775-1 at 1-2. He is also being detained in a low-security section at Fort Dix, indicating that the BOP does not consider him to be a clear danger to either the prison or outside community. Dkt. 2775-1 at 3; *see also United States v. Perkins*, *supra* note 3, at 368; *United States v. Tazewell*, No. 07 Cr. 1035, 2021 U.S. Dist. LEXIS 99, 2021 WL 21980, at *21 (S.D.N.Y. 2021). Last, he shared plans to live with his youngest son and daughter-in-law upon release, has provided their address of residence, and has also provided contact information for a prospective employer. *See* Dkt. 2775-1 at 4.

Silva-Rentas has also served over half of his current sentence, Dkt. 2808-1 at 2, which may factor in his favor. *See, e.g.*, *United States v. Gil*, 484 F. Supp. 3d 19, 25 (D.N.H. 2020) (noting that the defendant had already served approximately half of his sentence, assuming good-time credit, in deciding to reduce his sentence). However, it should be noted that Silva-Rentas's imposed sentence was already substantially shorter than the sentencing guideline range and he has served significantly less than half of even the minimum of the guideline range. *See United States v. Ilarraza*, 460 F. Supp. 3d 120, 121 (D. Mass. 2020) (denying the defendant compassionate release while noting that "[d]efendant will have served only two-thirds" of the imposed sentence, less than half of the statutory maximum and substantially lower than the guideline range). All told, this factor weighs neither for nor against Silva-Rentas.

Other factors weigh toward a finding that Silva-Rentas would pose a danger if released. He had a prior drug conviction in 1998 and was a leader in the drug trafficking conspiracy underlying his current conviction. Dkt. 1561 at 9 ¶ 40, 18 ¶ 90. His offenses included the illegal possession of

firearms, and while there is no evidence in the record that he personally used these weapons against other people, firearm offenders are in general more likely to recidivate than non-firearm offenders. *See United States v. Whindleton*, No. 2:13-cr-00064, 2020 U.S. Dist. LEXIS 232373, 2020 WL 7265844, at *3 (D. Me. 2020) ("Firearms offenders in general recidivate at a significantly higher rate than non-firearms offenders. . .Firearms offenders also recidivate more quickly after they are released from incarceration, and they are more likely to commit more serious crimes"). He is 47 years old and there is no evidence that his health conditions would limit his ability to recidivate. He had several disciplinary actions against him while incarcerated, though notably for nonviolent behavior. Dkt. 2808-2 at 1-2. And his prior employment history, consisting of a two-year stint in construction, is quite limited. Dkt. 1561 at 21 ¶¶ 106-107. This raises a concern about how he would support himself financially upon release, ameliorated in part by his claimed offer of employment and plan to reside with his youngest son.

Although this is a close question, after weighing the above factors, I conclude that Silva-Rentas's early release poses a danger to the safety of others and to the community due to the risk of recidivism.

    *iii.*    **18 U.S.C. § 3553(a) Factors**

The third issue the court must consider is whether the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of reducing Silva-Rentas's sentence. 18 U.S.C. § 3553(a) outlines seven factors to consider in imposing a sentence. The seven factors are not particularly distinct, especially in the context of reducing rather than imposing a sentence, and most courts considering compassionate release analyze the factors in tandem rather than individually. *See, e.g.*, *United States v. Mackenzie*, 458 F. Supp. 3d 53, 56 (D. Mass. 2020).

Most of the factors weigh against Silva-Rentas's release. With respect to the nature and circumstances of the offense and the history and characteristics of the defendant, he was sentenced for several very serious crimes. He was a leader in the drug trafficking conspiracy and illegally possessed weapons in furtherance of the conspiracy. Dkt. 1561 at 9. He is also a repeat offender, having been convicted of a controlled substances charge in 1997. Dkt. 1561 at 18 ¶ 90. Additionally, with respect to his sentencing range, Silva-Rentas has already received a significantly shorter sentence than his offense level and criminal history would suggest – his guideline sentencing range would be 360 months to life, whereas he received 215 months and 24 days. *See* Dkt. 1640, Dkt. 1646. Last, a reduction in Silva-Rentas's sentence would create notable disparities between his sentence and those of his co-defendants who were leaders in the drug trafficking scheme. Luiz Lopez-Fernandez, whose offense level was 39 and with no prior criminal history, was sentenced to 189 months. Dkt. 1620. Randy Barbosa-Martinez, whose offense level was 36 and who also had no criminal history, was sentenced to 151 months. Dkt. 1591. Silva-Rentas has served 113 months to date. Dkt. 2808-1 at 2. If he were released, his time served would be significantly shorter than his two most similar co-defendants, despite both having lower offense levels and no prior criminal history.

Only the seventh factor tilts in Silva-Rentas's favor. Since he was generally nonviolent and his connection to individual victims is remote, there is no strong need to provide restitution to the victims of his offenses. The fifth factor, which addresses a defendant's potential danger to any person or to the community, is analyzed above and tilts against Silva Rentas. I conclude that the § 3553(a) sentencing factors weigh against his release.

## CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** Silva-Rentas's motion for compassionate release without prejudice.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within two weeks of the date of this order. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 1st day of July 2024.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge